FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 4 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

PETE EDWARDS; AND
MABELENE MORENS                                    PLAINTIFFS

VS.                                    CASE NO. 3:19-CV-126 DPM

DAKOTA DUNKIN, IN HIS INDIVIDUAL CAPACITY;
JOHN DOES I-X, IN THEIR INDIVIDUAL CAPACITIES;
CITY OF OSCEOLA, ARKANSAS                    DEFENDANTS

## AMENDED COMPLAINT

COME NOW the Plaintiffs, Pete Edwards and Mabelene Morens, by and through counsel of record and file this Amended Complaint against the Defendants, both jointly and severally; and, for cause of action would state as follows:

**(I)
INTRODUCTION**

1.      This cause of action arises out of the unconstitutional use of deadly force against Pete Edwards and Mabelene Morens by Dakota Dunkin on or about April 1, 2019.  At the time of the shooting, Defendant Dunkin was acting under color of law and as a law enforcement officer of the City of Osceola Police Department (OPD).

2.      After the unconstitutional use of deadly force against Pete Edwards and Mabelene Morens by Defendant Dunkin, Plaintiffs' counsel made a Public Records Request for documents pertaining to this action, this incident, subsequent investigations and the operation and past history of the Osceola Police Department from the following governmental entities: 1) City of Osceola; 2) City of Blytheville; 3) Arkansas State Police; 4) Black River Technical College; 5) Commission of Law Enforcement Standards and Training; and 6) ALETA. However, these governmental

entities, excluding the City of Blytheville and ALETA, have refused to provide the requested documents by either refusing to respond at all to the FOIA request or claiming some sort of privilege. Plaintiffs submit that the documents and things requested under the Public Records Act should have been provided to Plaintiffs to allow them to more fully investigate this matter. Accordingly, at the time of the filing of this Amended Complaint, Plaintiffs have been refused access to pertinent records and expressly reserve the right to amend this complaint and add additional allegations and/or parties upon receipt of the pertinent records and identification of additional facts and/or parties.

## (II)
## PARTIES

3.    The Plaintiff, Pete Edwards (hereinafter "Edwards") is an adult resident and citizen of Chico County, Arkansas. The Plaintiff, Mabelene Morens (hereinafter "Morens"), is an adult resident and citizen of Mississippi County, Arkansas. Both Plaintiffs are African American.

4.    Upon information and belief, Defendant Dakota Dunkin (hereinafter "Dunkin") is an adult resident of Mississippi County, Arkansas. At all times material hereto, Defendant Dunkin was employed by the City of Osceola, Arkansas and the OPD as a law enforcement officer, acting under color of state law and acting in the course and scope of his employment. Defendant Dunkin is sued in his individual capacity as a police officer with the Osceola Police Department. Defendant Dunkin is Caucasian.

5.     Defendants JOHN DOES I-X are employees and/or law enforcement officers, including supervisory officers, employed by Defendant City of Osceola, Arkansas and/or the Osceola Police Department (OPD) whose identities are presently unknown. At all times material hereto, Defendants JOHN DOES I-X were employed by the City of Osceola and/or OPD, acting under color of state law and acting in the course and scope of their employment. Defendants JOHN DOES I-X are sued in their individual capacity and in their official capacities as employees of the City of Osceola and OPD. (Attached to the Complaint as *__Exhibit A__* is a John Doe Affidavit).

6.     Defendant City of Osceola, Arkansas (hereinafter "City") is in Mississippi County, Arkansas and is a municipal entity and a political subdivision of the State of Arkansas. Among its other functions, the City of Osceola operates and maintains a law enforcement agency called OPD for which it employs various law enforcement and other personnel. Defendant City of Osceola is under a duty to ensure its policing activities are operated in a lawful manner so as to preserve the peace of the City of Osceola and to preserve its citizens the rights, privileges, and immunities guaranteed and secured to them by the constitutions and laws of the United States and the State of Arkansas.  Defendant City of Osceola is responsible for ensuring the establishment and enforcement of rules, regulations, procedures, policies, practices, and customs for the OPD, including hiring, training, supervision and discipline of law enforcement officers and other employees.

**(III)**

## JURISDICTION AND VENUE

7. This civil rights action is brought pursuant to 42 U.S.C. §§ 1981, 1983 & 1985 & 1986. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343(a)(1), (3), and (4). Accordingly, this Honorable Court has jurisdiction over all of the claims asserted herein.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the defendants reside in the Northern District of Mississippi and all of the relevant events occurred within this District.

9. Each and all of the acts of the Defendants and employees or agents of the City of Osceola involved in this incident were performed under the color and pretense of the constitutions, statues, ordinances, regulations, customs and usages of the United States of America, the State of Arkansas, under the color of law and by virtue of their official office and authority as employees, law enforcement officers and agents of the City of Osceola.

### (IV)
### STATEMENT OF FACTS

10. The unconstitutional shooting of Edwards and Morens by Defendant Dunkin occurred in Mississippi County, Arkansas on April 1, 2019, at around 12:40 a.m. At all times material hereto, Defendant Dunkin was acting as a law enforcement officer with the City of Oscoela and the OPD, acting under color of state law and in the course and scope of his employment.

11. Prior to the unconstitutional shooting of Edwards and Morens on April 1, 2019, Defendant Dunkin has previously served as a law enforcement officer for the

4

City of Blytheville, Arkansas, being first hired in December of 2014. Defendant Dunkin received his basic police training while employed at the City of Blytheville, Arkansas and completed his basic law enforcement training at Black River Technical College, receiving his Certificate of Proficiency in Law Enforcement on November 13, 2015.

12.    While employed at the City of Blytheville Police Department, Defendant Dunkin illustrated conduct which made it obvious that he was unfit to serve as a law enforcement officer. In particular, Defendant Dunkin was disciplined for failure to attend mandatory law enforcement training. Further, Defendant Dunkin habitually failed to respond to calls from his supervisors concerning work, failed to maintain police paperwork and failed to report to work when ordered by supervisors. As a result of these actions, Defendant Dunkin was disciplined and received a written reprimand from the Blytheville Police Department.

13.    After being disciplined for disobeying direct orders from his supervisors, Defendant Dunkin's conduct at the Blytheville Police Department only worsened. In particular, Defendant Dunkin again refused to report to work without notifying his supervisors and was listed as AWOL by the Blytheville Police Department. When investigating the reasons for Defendant Dunkin's unauthorized absence from work at the Blytheville Police Department, Defendant Dunkin again became insubordinate with his supervisors. After investigation, Defendant Dunkin was found to have violated numerous policies of the Blytheville Police Department, including Insubordination, Refusal to Work, Compliance with Lawful Order, Incompetence, Notification for Work, AWOL/Inactive Status and lying about reasons not reporting

5

to work. As a result of these actions, Defendant Dunkin's employment as a police officer with the Blytheville Police Department was terminated.

14. Based on Defendant Dunkin's performance and actions at the Blytheville Police Department it would be apparent to any reasonable police department that Defendant Dunkin was unfit to serve as a law enforcement officer based on his failure to respond to superior officers when called, his insubordination and failure to comply with direct orders of supervisors, his failure to report to work when scheduled, his incompetence and lying. Despite the fact that Defendant Dunkin was not competent or fit to serve as a law enforcement officer, Defendant Dunkin was hired by the City of Osceola as a law enforcement officer.

15. Plaintiffs aver that the City of Oscoela failed to conduct a proper pre-hiring background check when hiring Defendant Dunkin and that any reasonable background check would have revealed that Defendant Dunkin was unfit to serve as a law enforcement officer given his inability to follow orders, report to work and lying which are all essential duties of a law enforcement officer. Therefore, the Plaintiffs aver that the City of Osceola and the OPD were deliberately indifferent in the hiring of Defendant Dunkin as a full- time law enforcement officer in October of 2016.

16. After being hired by the Osceola Police Department, the OPD failed to provide him with retraining concerning the problems he exhibited and which led to his termination at the Blytheville Police Department or otherwise address these issues.

17. Further, based on training records obtained from ALETA, the City of Osceola and the OPD failed to provide any training to Defendant Dunkin other than

6

one course on racial profiling in 2017. Accordingly, the City of Osceola and the OPD failed to provide on-going training to its officers, including Defendant Dunkin, on required topics such as vehicle stops, use of force, use of deadly force, among other things. Further, according to the documents produced by ALETA, the City of Osceola and the OPD failed to even provide its officers, including Defendant Dunkin, with the mandatory, annual 16 hours of in-service training. The failure to provide both law enforcement training on topics involving activities which officers engage in on a routine basis and on topics where there is an obvious need for training illustrates the City of Osceola's and the OPD's deliberate indifference to the constitutional rights of persons encountered by its law enforcement officers.

18.     On March 31, 2019, Edwards was in Mississippi County, Arkansas visiting his child who lives his mother in Mississippi County at 401 Oak, Osceola, Arkansas. During this visit, arrangements were made for Edwards to obtain a dog house for his dog from Mr. Morens. After Edwards left the visit with his child, Edwards was travelling to the home of Ms. Morens to visit her husband, Mr. Morens, to pick up a dog house for his dog.

19.     As Edwards was driving to the Morens home, he observed an Osceola Police Department patrol car driving on the same road travelling in the opposite direction. As Edwards passed this patrol car, he was observing all traffic laws and was not committing any violation or crime. Therefore, there was no reasonable suspicion or probable cause to engage in any law enforcement action or stop concerning Edwards.

20.     After Edwards passed the OPD patrol car travelling in the opposite direction, he continued towards the Morens home. The OPD patrol car that he passed did not activate its lights or attempt any traffic stop when Edwards passed the OPD vehicle.

21.     After Mr. Edwards arrived at the Morens home, he stopped his vehicle in front of the house and turned his lights off. Ms. Morens was plainly visible on the front porch of her home. While sitting in his vehicle in front of the Morens' home, Edwards noticed a police vehicle approaching his location with its lights activated. This vehicle was being operated by Defendant Dunkin.

22.     As Edwards had committed no crime or traffic violation, there was no legitimate or legal basis for any law enforcement action against Mr. Edwards by Defendant Dunkin. Plaintiffs aver that this unconstitutional stop was based solely on Mr. Edwards race, African American.

23.     Despite their being no legal justification for any law enforcement stop or action against Mr. Edwards, Defendant Dunkin stopped his vehicle with its blue lights activated directly behind Mr. Edwards' vehicle. These actions constituted an unconstitutional and illegal seizure of Mr. Edwards by Defendant Dunkin.

24.     While Defendant Dunkin did not have reasonable suspicion or probable cause to stop or detain Mr. Edwards, Defendant Dunkin exited his patrol car, drew his weapon, pointed it at Mr. Edwards and ordered Mr. Edwards out of his vehicle. These actions constituted an unconstitutional and illegal seizure of Mr. Edwards through the use of excessive force by Defendant Dunkin.

25.    Despite not committing any crime or there being reasonable suspicion or probable cause to believe that he was committing any crime, Mr. Edwards complied with the unlawful and unconstitutional order of Defendant Dunkin to exit the vehicle as he feared for his life as Defendant Dunkin's unconstitutional order to exit the vehicle was made at gunpoint.

26.    In compliance with the unlawful and unconstitutional order of Defendant Dunkin, Mr. Edwards exited his vehicle and raised his hands in the air. At this time, Mr. Edwards did not have anything in his hands and it was plainly obvious that he was not armed and was complying with Defendant Dunkin's unlawful and unconstitutional orders.

27.    After exiting his vehicle and placing his hands in the air, Mr. Edwards asked Defendant Dunkin why he was being stopped. Defendant Dunkin refused to respond to this inquiry and unlawfully ordered Mr. Edwards to lay on the ground at gunpoint. These actions constituted an unconstitutional and illegal seizure of Mr. Edwards by Defendant Dunkin through the use of excessive force.

28.    As Mr. Edward had not committed any crime and there being no reasonable suspicion or probable cause to believe that he was committing any crime, Mr. Edwards asked Defendant Dunkin why he was being ordered to the ground. Defendant Dunkin refused to respond to this inquiry and continued to order Mr. Edwards to the ground. These actions constituted an unconstitutional and illegal seizure of Mr. Edwards by Defendant Dunkin through the use of excessive force.

29.    Immediately thereafter, and without any warning, Defendant Dunkin intentionally and indiscriminately began shooting his firearm at Mr. Edwards,

striking him numerous times. In addition, Defendant Dunkin's intentional and indiscriminate shooting of his firearm resulted in Ms. Morens being struck by a bullet and numerous other bullets hitting other vehicles and homes in the area.

30. As a result of the unconstitutional use of deadly force by Defendant Dunkin, Mr. Edwards was immediately immobilized, fell to the ground and sustained serious and life-threatening injuries and Ms. Morens suffered serious injuries.

31. Despite the obvious injuries to the Plaintiffs and the obvious need to provide medical attention, Defendant Dunkin failed to immediately render medical aid and began picking up his spent shell casings, disturbing the crime scene. Plaintiffs aver that Defendant Dunkin's picking up shell cases was performed in effort to cover-up his unjustified shooting of the Plaintiffs. As backup arrived, Defendant Dunkin approached Mr. Edwards, handcuffed him and only then attempted to stop the bleeding from Mr. Edwards' wounds.

32. Once backup arrived, Defendant Dunkin was asked by other OPD officers why he shot Mr. Edwards and Defendant Dunkin failed to respond to these inquires.

33. After backup arrived, Mr. Edwards was transported from the scene by ambulance and eventually life-flighted to Regional One Medical Center in Memphis for serious injuries. Further, Ms. Morens sustained injuries that required medical attention.

34. At the time of the shooting, Mr. Edwards had committed no crime, nor was there reasonable suspicion that he had committed any crime.

35.    At the time of the shooting, Mr. Edwards was unarmed and posed no danger to Defendant Dunkin.

36.    At the time of the shooting, Mr. Edwards did not take any action which could be considered threatening by an objectively reasonable officer.

37.    At the time of the shooting, Mr. Edwards was not attempting to flee from Defendant Dunkin.

38.    At the time of the shooting, Ms. Morens had committed no crime, nor was there reasonable suspicion that she had committed any crime.

39.    At the time of the shooting, Ms. Morens was unarmed and posed no danger to Defendant Dunkin.

40.    At the time of the shooting, Ms. Morens did not take any action which could be considered threatening by an objectively reasonable officer.

41.    At the time of the shooting, Ms. Morens was not attempting to flee from Defendant Dunkin.

42.    Defendant Dunkin's actions and indiscriminate shooting constituted an illegal and unconstitutional seizure through the improper use of deadly force and violated Mr. Edwards' and Ms. Morens' clearly established rights under the Fourth Amendment of the United States Constitution and similar rights under the Arkansas Constitution.

43.    Alternatively, Defendant Dunkin's actions and indiscriminate shooting constituted an arbitrary abuse of governmental authority with no legitimate law enforcement justification and exhibited conscience shocking behavior and violated Mr. Edwards and Ms. Morens clearly established rights under the Fourteenth

11

Amendment of the United States Constitution and similar rights under the Arkansas Constitution.

44.     In addition to Defendant Dunkin's efforts to cover-up his illegal and unconstitutional shooting of the Plaintiffs by disturbing the crime scene, the City of Osceola and the OPD, by and through the actions of JOHN DOES I-X, engaged in an officially sanctioned course of action designed to cover-up the unconstitutional actions of Defendant Dunkin which included attempts and efforts to intimidate both Ms. Morens and another independent witness to the shooting by threatening them with criminal action and forcing them to give a statement, even though the City and the OPD knew Ms. Morens and the witness were represented by counsel.   Despite multiple attempts to contact the City of Osceola, its counsel, the Chief of Police and others, the City and the Chief of Police never responded, even ignoring FOIA requests.

45.     Further, Plaintiffs aver that Defendant Dunkin's unconstitutional and conscience shocking behavior, and subsequent attempts to intimidate and coerce Ms. Morens and an independent witness, occurred as a result of their status as African Americans and that these unconstitutional and illegal actions of Defendant Dunkin and JOHN DOES I-X would not have been committed if Plaintiffs were Caucasian.

46.     As a direct and proximate cause of the Defendants illegal and unconstitutional actions, Plaintiffs sustained serious injuries, physical and emotional pain and suffering, permanent injuries, medical bills and other damages.

47.     The actions of Defendant Dunkin were in compliance with the policies, practices and customs of the City of Osceola and the OPD and the execution of these

policies, practices and customs of the City of Oscoela and the OPD was the moving force behind the actions of Defendant Dunkin.

48.    The actions of Defendant Dunkin were proximately caused by the deliberate indifference of the City of Osceola and the OPD with respect to the hiring, training, supervision and discipline of officers of the OPD, including Defendant Dunkin.

49.    The actions of Defendant Dunkin were so egregious as to warrant the imposition of substantial punitive damages.

50.    As a result of the joint and concurrent actions of the Defendants, Mr. Edwards sustained serious and permanent injuries, including paralysis, and his constitutional rights were violated.

51.    As a result of the joint and concurrent actions of the Defendants, Ms. Morens sustained serious injuries and her constitutional rights were violated.

## (V)
## CAUSES OF ACTION

52.    The Plaintiffs reassert and incorporate all previous paragraphs into each subsequent Count.  Each enumerated count also incorporates all allegations of all other counts.

### COUNT ONE:
### INDIVIDUAL LIABILITY OF DEFENDANT DUNKIN AND JOHN DOES I-X

53.    Defendant Dunkin committed the above described actions and/or omissions under the color of law and by virtue of his authority as a law enforcement officer and employee of Defendant City of Osceola and substantially deprived the

Plaintiffs of their clearly established rights, privileges and immunities guaranteed to him as citizens of the United States in violation of 42 U.S.C. §1983 and deprived Plaintiffs of the rights guaranteed to them by the First, Fourth and Fourteenth Amendments of the United States Constitution including, but not limited to:

a. Freedom from unreasonable search and seizure of their person;
b. Freedom from deprivation of liberty without due process of law;
c. Freedom from summary punishment;
d. Freedom from the use of excessive and deadly force;
e. Denial of equal protection of the law;
f. Freedom from racial discrimination;
g. Freedom from arbitrary governmental activity which shocks the conscience of a civilized society; and
h. Retaliation for exercising his First Amendment rights through requesting basis for stop.

54. Defendant Dunkin and JOHN DOES I-X also attempted to interfere with Plaintiffs' civil rights by committing the above described actions and/or omissions under the color of law and by virtue of their authority as law enforcement officers and employees of the City of Osceola by attempting to cover-up the unconstitutional and unjustified shooting by disturbing the crime scene and engaging in efforts to intimidate both Ms. Morens and another independent witness to the shooting by threatening them with criminal action and forcing them to give a statement, even though the City and the OPD knew Ms. Morens and the witness were represented by counsel. These unconstitutional and illegal actions substantially deprived Plaintiffs of their clearly established rights, privileges and immunities guaranteed to them as citizens of the United States in violation of 42 U.S.C. §§1981, 1985 & 1986, by attempting to manipulate the crime scene by picking up spent shell casings to justify unconstitutional actions and attempting to intimidate witnesses.

14

55.    Defendant Dunkin and JOHN DOES I-X interfered with Plaintiffs' civil rights by committing the above described actions and/or omissions with an intent to discriminate against the Plaintiffs on the basis of their race, under the color of law, by virtue of their authority and in the scope of their employment as law enforcement officers and employees of the City of Osceola in violation of 42 U.S.C. §1981 and Title VI of the Civil Rights Act of 1964 by depriving Plaintiffs, based on their race or color, of their  clearly established rights to equal benefit and like punishment. Therefore, Defendant Dunkin and JOHN DOES I-X denied Plaintiffs equal protection of laws because of their race or color.

56.    As a result of the following acts and omissions, Defendant Dunkin and JOHN DOES I-X violated Plaintiffs' constitutional and federally protected rights and Plaintiffs sustained serious and significant damages.

## COUNT TWO:
## MUNICIPAL LIABILITY AGAINST CITY OF OSCEOLA

57.    The City of Osceola is under a constitutional duty to properly hire, provide policy guidance, train, supervise and discipline the members of the OPD to ensure that the policing activities of the OPD are run in a lawful manner, preserving to the citizens of the City the rights, privileges and immunities guaranteed to them by the Constitutions of the United States of America and the State of Arkansas and the laws of the United States of America and the State of Arkansas.

58.    The City permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice or custom of its police officers, including Defendant

Dunkin, violating the constitutional rights of the public at large, including Plaintiffs.

59.     The actions of Defendant Dunkin complained of herein were unjustified, unreasonable, unconstitutional, excessive and grossly disproportionate to the actions of the Plaintiffs, and constituted an unreasonable search and seizure effectuated through the use of excessive and deadly force and a deprivation of Plaintiffs' constitutional rights secured to them by the First, Fourth and Fourteenth Amendment of the United States Constitution and other federally protected rights.

60.     The City is directly liable to the Plaintiffs for damages due to following policies, practices and customs of the OPD which were in effect at the time and which were maintained with deliberate indifference to the constitutional rights of citizens and which were the underlying cause of the constitutional violations:

a.      Failure to provide the Osceola Police Department with sufficient funds for proper operation of the OPD;

b.      Failure to properly screen potential law enforcement officers, including Defendant Dunkin, to determine if they were qualified and fit to serve as law enforcement officers with the OPD;

c.      Failure to properly and adequately train the OPD's officers, including Defendant Dunkin, regarding obvious law enforcement activities including, but not limited to: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) misdemeanor stops; 5) felony stops; 6) use of force; 7) use of deadly force; 8) use of firearms and intermediate force weapons; 9) apprehending/arresting suspects; 10) taking cover; 11) use of audio/video recording devices; 12) providing medical attention; 13) summoning medical attention; 14) arresting procedures; 15) completion of reports and collection of evidence; 16) completion of Use of Force Reports; 17) investigating officer compliance with policy and procedure and critical incidents; 18) monitoring officer compliance with policy; 19) early warning systems; 20) racial profiling; and 21) civil rights laws and violations.

d.      Failure to properly and adequately supervise and discipline the OPD's officers, including Dakota Dunkin, regarding obvious law enforcement activities including, but not limited to: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) misdemeanor stops; 5) felony stops; 6) use of force; 7) use of deadly force; 8) use of firearms and intermediate force weapons; 9) apprehending or arresting suspects; 10) taking cover; 11) use of audio/video recording devices; 12) providing medical attention; 13) summoning medical attention; 14) arresting procedures; 15) completion of reports and collection of evidence; 16) completion of Use of Force Reports; 17) investigating officer compliance with policy and procedure and critical incidents; 18) monitoring officer compliance with policy; 19) early warning systems; 20) racial profiling; and 21) civil rights laws and violations.

e.      Failure to adequately monitor and evaluate the performance of the OPD's officers, including Defendant Dunkin, regarding their compliance with the laws and policies, practices and customs with respect to: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) misdemeanor stops; 5) felony stops; 6) use of force; 7) use of deadly force; 8) use of firearms and intermediate force weapons; 9) apprehending/arresting suspects; 10) taking cover; 11) use of audio/video recording devices; 12) providing medical attention; 13) summoning medical attention; 14) arresting procedures; 15) completion of reports and collection of evidence; 16) completion of Use of Force Reports; 17) investigating officer compliance with policy and procedure and critical incidents; 18) monitoring officer compliance with policy; 19) early warning systems; 20) racial profiling; and 21) civil rights laws and violations.

f.      Failure to adequately respond to and investigate complaints regarding officer misconduct by the citizenry of the OPD's officers, including Defendant Dunkin, regarding: 1) patrolling procedures; 2) traffic stops; 3) *Terry* stops; 4) misdemeanor stops; 5) felony stops; 6) use of force; 7) use of deadly force; 8) use of firearms and intermediate force weapons; 9) apprehending/arresting suspects; 10) taking cover; 11) use of audio/video recording devices; 12) providing medical attention; 13) summoning medical attention; 14) arresting procedures; 15) completion of reports and collection of evidence; 16) completion of Use of Force Reports; 17) investigating officer compliance with policy and procedure and critical incidents; 18) monitoring officer compliance with policy; 19) early warning systems; 20) racial profiling; and 21) civil rights laws and violations.

g.    The OPD is aware that a "code of silence" exists among members of its department whereby officers of the OPD will not report misconduct of fellow officers and cover-up improper conduct and has failed to take such steps to preclude its existence in the OPD. As a result of the "code of silence" which exists at the OPD, officers act unconstitutionally without fear of discipline from the OPD.

61.    The City knew or should have known that the above-referenced policies, practices, and/or customs, translated into an underqualified and undertrained police force that was ill-equipped to perform obvious and necessary law enforcement activities without exposing the public to unwarranted danger of injury. Therefore, the City's policymakers were on actual or constructive notice of the deficiencies with its policies, practices and customs which make officer misconduct a foreseeable consequence.

62.    The City knew or should have known that the above-referenced policies, practices, and/or customs, would likely lead to the serious injury or death to persons in the City of Osceola and that such injuries were foreseeable; yet, they disregarded that risk.

63.    The aforementioned policies, practices and customs were inadequate in relation to the specific tasks their officers must routinely perform and with respect to activities where there is an obvious need for proper policies, practices and customs and therefore, illustrated its deliberate indifference and/or reckless disregard to the consequences of officer misconduct.

64.    The City's above referenced policies, practices and/or customs violated Plaintiffs' constitutional rights; and said policies, practices and/or customs were the moving force behind and proximate cause of said violations.

18

65.    The City's above referenced policies, practices and/or customs demonstrated a deliberate indifference on the part of policymakers of the City to the constitutional rights of citizens, including Plaintiffs, and was the proximate cause of the injuries and damages sustained by Plaintiffs, and evidenced a reckless or callous indifference to the federally protected rights of Plaintiffs.

66.    By failing to recognize or correct the deficiencies with its policies, practices and customs, the City consciously disregarded the known and foreseeable consequences thereof.

67.    The City's deliberately indifferent policies, practices and customs were the moving force behind the deprivation of their Plaintiffs' constitutional rights.

68.    There is a direct causal link between the policies, practices and customs and the violation of Plaintiffs' state and federal constitutional rights.

69.    As a direct and proximate result of the foregoing policies, practices and customs of the City, the violation of the state and federal constitutional rights of citizens by the members of the OPD and Defendant Dunkin was substantially certain to occur.  In addition, as a direct and proximate result of the aforementioned policies, practices and customs of the City, Plaintiffs' constitutional rights were violated and they sustained injuries and damages.

## COUNT THREE:
## ARKANSAS CIVIL RIGHTS ACT

70.    In addition to violating Plaintiffs' federally protected constitutional rights as alleged in Counts I & II, the Defendants violated Plaintiffs' clearly

established rights guaranteed to them by the Arkansas Constitution in violation of the Arkansas Civil Rights Act.

71. With respect to the violations of Plaintiffs' state constitutional rights by Defendant Dunkin, Plaintiffs incorporate the allegations set forth in Count I.

72. With respect to the violations of Plaintiffs' state constitutional rights by Defendant City of Osceola and the OPD, Plaintiffs incorporate the allegations set forth in Count II.

## COUNT IV:
## STATE LAW TORTS

73. By virtue of the facts alleged herein, Plaintiffs have been the victims of common law assault and battery, as well as a felony of aggravated assault, and outrageous conduct, as well as a victim of a felony as defined by Ark.Code Ann. § 16–118–107.

74. Plaintiffs bring these state actions against the applicable Defendants as set forth under Arkansas law which include claims against the City of Osceola for all actions performed by Defendant Dunkin in the course and scope of his employment with the City of Osceola and Defendant Dunkin any other actions.

## COUNT V:
## FOIA

75. Plaintiffs, through counsel, made valid requests for information under the Arkansas Freedom of Information Act. (Attached as ***Exhibit B*** are the FOIA Requests).

76. The City, for no legal reason, has failed to respond.

77.     Thus, Plaintiffs request appropriate Declaratory and Injunctive relief requiring the City to produce the requested information.

## COUNT VI:
## PUNITIVE DAMAGES

78.     The actions set forth herein committed by Defendant Dunkin were intentional, malicious, reckless and performed with malice and caused Plaintiffs serious emotional and physical damages, entitling the Plaintiffs to substantial award of punitive damages against Defendant Dunkin.

## COUNT VI:
## DAMAGES

79.     As a direct and proximate result of the aforementioned actions and omissions of the Defendants, Plaintiffs' constitutional rights were violated and Plaintiffs' were damaged.  Plaintiffs seek recovery from the Defendants, both jointly and severally, of all damages to which they may be entitled for their injuries and damages to the fullest extent as possible under both state and federal law, including, but not, the following:

      a.     Physical pain and suffering;
      b.     Emotional pain and suffering;
      c.     Medical expenses;
      d.     Permanent injuries;
      e.     Loss of enjoyment of life;
      f.     Loss of wages;
      g.     Loss of earning capacity;
      h.     Fright, fear, anxiety;
      i.     Punitive damages against the applicable Defendants;
      j.     Pre- and post-judgment interest;
      k.     Statutory and discretionary costs;
      l.     Attorney's fees;
      m.     A declaratory judgment that the acts and conduct herein were unconstitutional;
      n.     Injunctive relief precluding the Defendants from engaging in the conduct complained of herein in the future and requiring the City of

Osceola to provide proper policy, training and supervision of its officers and holding them accountable for their misconduct; and

o.    All such further relief, both general and specific, to which they     may be entitled under the premises.

## PRAYERS FOR RELIEF

80.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs sue the Defendants, both jointly and severally, for the injuries sustained by the Plaintiffs and pray for a judgment against the Defendants for compensatory damages in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which they may be entitled under the premises.

81.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs sue Defendants, both jointly and severally and prays for a judgment against Defendant Dunkin for punitive damages on the federal  and state claims and against the City under the ACRA in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which they may be entitled under the premises.

82.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs sue Defendants, both jointly and severally and prays for a Declaratory and Injunctive relief against the City requiring compliance with the FOIA and Plaintiffs' request, both general and specific, to which they may be entitled under the premises.

83.    **A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.**

Respectfully submitted,

**SUTTER & GILLHAM, P.L.L.C.**
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501/315-1910  Office
501/315-1916  Facsimile
Attorney for the Plaintiffs

By: /s/ Luther Oneal Sutter
Luther Oneal Sutter, Esq., AR BPR # 95031
luther.sutterlaw@gmail.com

By: /s/ Lucien R. Gillham
Lucien R. Gillham, Esq., AR BPR # 99199
luther.sutterlaw@gmail.com

**COHRAN FIRM – MIDSOUTH**
One Commerce Square, Suite 1700
Memphis, Tennessee 38119
901/523-1222  Office
901/523-1999  Facsimile
Attorney for Plaintiffs

By: /s/ Andrew C. Clarke
Andrew C. Clarke, Esq., AR BPR # 95070
aclarke@cochranfirmmidsouth.com

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**PETE EDWARDS; AND
MABELENE MORENS**                                                **PLAINTIFF**

**VS.**                                                **CASE NO. 3:19-CV-126 DPM**

**DAKOTA DUNKIN, IN HIS INDIVIDUAL CAPACITY;
JOHN DOES I-X, IN THEIR INDIVIDUAL CAPACITIES;
CITY OF OSCEOLA, ARKANSAS**                                  **DEFENDANTS**

<u>**JOHN DOE AFFIDAVIT OF PLAINTIFF'S COUNSEL**</u>

Come the Plaintiffs, **PETE EDWARDS AND MABELEN MORENS**, by and through

Counsel, **SUTTER & GILLHAM, P.L.L.C.,** and, for this Affidavit, being competent to testify,

states that the statements below are true and accurate:

1.  I am a licensed attorney in good standing in the State of Arkansas and am the Partner and
    owner of **SUTTER & GILLHAM, P.L.L.C.,** who are the attorneys of record for the
    Plaintiffs in the attached Amended Complaint.

2.  Plaintiffs have made reasonable effort to obtain the identity the names of John Does 1-10,
    &/or individuals who are likely to be additional Defendants in the above-captioned case.

3.  The identities of all individuals and entities are currently unknown.  Plaintiffs hereby
    designate John Does 1-10 for the purpose of tolling the statute of limitations pursuant to
    ACA § 16-56-125.

4.  The pseudo-names will continue to be named &/or submitted with the actual names upon
    further discovery, if applicable.

    **FURTHER AFFIANT SAITH NAUGHT.**



## **VERFICIATION**

I, Luther Oneal Sutter, do hereby certify and state, under oath, that the above facts contained herein are true and correct to the best of my knowledge and belief.

_____

Luther Oneal Sutter
*Counsel for Plaintiff*

## ACKNOWLEDGMENT

State of Arkansas        )

                            ) SS.

County of Saline      )

Subscribed and sworn before me, a Notary Public, this 23rd day of July, 2019.

OFFICIAL SEAL
ELIZABETH A. HODGES
No. 12384183
PULASKI COUNTY
My Commission Expires 9-14-2021
NOTARY ARKANSAS PUBLIC

_____
Notary Public

My Commission Expires:
_____

# SUTTER & GILLHAM, P.L.L.C.

### ATTORNEYS AT LAW
MAILING ADDRESS: P.O. BOX 2012, BENTON, AR 72018
PHYSICAL ADDRESS: 310 WEST CONWAY STREET, BENTON, AR 72015
TELEPHONE 501-315-1910  FACSIMILE 501-315-1916

LUTHER ONEAL SUTTER, P.A.    TONA MARIA DEMERS    LUCIEN R. GILLHAM, P.A.

April 2, 2019

Via Facsimile

Mayor Dickie Kennemore
Captain Tom Scrivner

RE:    Public Records Request

Dear Captain:

Please be advised that my firm and Andy Clarke have been retained to represent the Pete Edwards and his family in claim stemming from a shooting incident on April 1, 2019. Please address all future contact and correspondence concerning this incident to my attention and refrain from contacting my client's without my express permission.

This letter also serves to put you on notice to maintain the integrity of ALL EVIDENCE pertaining to the arrest, detainment, transportation, booking, charging, releasing of my clients and others on April 1, 2019 and April 2, 2019 and not to dispose, alter, modify, destroy or perform destructive testing on any evidence, documents, reports, records, etc. pertaining to this incident prior to providing my office an opportunity to inspect this evidence. This request covers anything which in any way pertains to this incident and includes, but is not limited to, all correspondence, memos, law enforcement records, jail records, transportation records, memoranda, notes, lists, incident reports, supplemental incident reports, warrants, witness statements, videotapes from any source, audiotapes from any source, photographs, booking reports and photographs, intake sheets, jail logs, cellular telephone records, witness statements, diagrams, fingerprint cards, dispatcher tapes and logs, videos from patrol cars, officer schedules, preliminary hearing tapes, photographs of the scene and the victims, field notes, daily activity logs, daily rosters, daily work schedules, policies, procedures, ambulance records or reports, internal investigations, towing records, correspondence, personal belongings of my clients/other citizens, alleged drugs and/or drug paraphernalia, test results or any other evidence, records, documents or things pertaining to this the arrest or detainment of my clients and other citizens on April 1, 2019 and April 2, 2019.

If any evidence or other things pertaining in any way to this incident has or have already been tested, inspected, altered, modified, destroyed, lost or changed in any manner, I am requesting that you identify with particularity the evidence or things that has or have been tested, inspected, modified, altered, destroyed, lost or changed in any manner and the name, address and telephone number of the person, persons, entity or entities who tested, altered, inspected,



modified, destroyed, lost or changed in any manner any evidence or thing pertaining to this incident.

Pursuant to Arkansas Freedom of Information Act, please be advised that I would like to inspect and photocopy any and all records in the possession and/or control of the City of Osceola pertaining to the search, seizure, arrests and/or detainment of my client and any other citizens on April 1, 2019 and April 2, 2019:

1. All documents and things in any way related to the arrest, detainment, transportation, booking, charging, releasing of my clients and others on April 1, 2019 and April 2, 2019, including, but not limited to, the documents previously listed previously in this letter and used or filed in any subsequent criminal proceedings against any such persons.

2. The personnel files of each and every officer or employee who was involved in any way with the arrest, detainment, transportation, booking, charging and/or release of my clients of any other citizens on April 1, 2019 and April 2, 2019, or at any other subsequent time.

3. A copy of any and all internal investigations of the incident which occurred on April 1, 2019 and April 2, 2019, and any criminal proceedings stemming from this incident.

4. A copy of any and all documents, correspondence, evidence or other matters received from any state or federal agency including the ASP, DA, FBI, DOJ, AUSA regarding this incident or any investigation of City of Osceola.

5. A copy of any and all documents, correspondence, evidence or other matters provided to any state or federal agency including the ASP, DA, FBI, DOJ, AUSA regarding this incident or any investigation of City and/or other employees or agents of City of Osceola.

6. A copy of all documents, listings or compilations of all claims made against the City of Osceola.and/or and/or officers or employee of BCSD or Benton County alleging police misconduct and/or negligence for the past 15 years and documentation reflecting the resolution of each claim, regardless of whether the City contends that said resolution of the claim was confidential;

7. A copy of all documents, listings or compilations of all complaints or lawsuits filed against the City alleging police misconduct and/or negligence for the last 15 years and documentation reflecting the resolution of each complaint or lawsuits by way of settlement, judgment or otherwise, regardless of whether the City and/or and/or officers or employee of the City contends that said resolution of the claim was confidential;

8. A copy of the training records for each officer on duty on 4/1/19.

9.     A copy of all documents, listings, summaries and/or compilations of weekly, monthly and/or annual reports of Internal Affairs complaints made against officers of the City for the last 15 years which identifies the complainant, nature of the complaint and the resolution or disposition of the complaint;

10.     A copy all documents, listings and/or compilations that reflect all officers of the City who have been terminated for misconduct and/or violation of policy over the last 15 years which identifies the nature of the misconduct and/or violation of policy;

11.     A copy of all documents, listings and/or compilations which reflects all officers of the City who have been charged with criminal offenses over the last 15 years which identifies the nature of the criminal offense and the results of any criminal prosecution;

12.     A copy of any judgments, decrees, consent judgments, injunctions, settlement agreements or other legal document entered into by City or entered by a court with any governmental and/or law enforcement agency dealing in any respect with operation of the City and its respective divisions; and

13.     A copy of any policies, rules, regulations of City with respect to 1) search and seizure; 2) warrantless entries onto property; 3) probable cause; 4) reasonable suspicion; 5) detaining citizens; 6) arresting procedures; 7) use of force; 8) mirandizing suspects; 9) transportation of suspects; 10) warrantless arrests for misdemeanors; 11) citations in lieu of physical arrest; 12) use of force; 13) use of audio/video recording devices; 14) group or mass arrests; 15) booking and processing of detainees or arrestees; 16) report writing; 17) record keeping; 18) processing property or evidence; 19) providing medical attention; 20) use of force; 21) excessive force; 22) code of silence; 24) code of ethics; 25) summoning medical attention; 26) completion of Use of Force Reports or other reports which document the use of any type of force on a citizen; 27) investigating officer compliance with policy and procedure and critical incidents; 28) monitoring officer compliance with policy including any early warning system; 29) training officers; 30) hiring of officers, including psychological testing; 31) evaluation of officers; 32) retention of officers; 33) civil rights laws and violations; and 34) etc. which were in effects on April 1, 2019.

14.     Any correspondence or other documents received by Benton County and/or BCSO from any person or entity concerning the incident which occurred on April 1, 2019, and the subsequent criminal proceedings arising therefrom.

15.     Any correspondence or other documents sent by Benton County and/or BCSO to any person or entity concerning the incident which occurred on April 1, 2019, and the subsequent criminal proceedings arising therefrom.

16. A copy of all FOIA requests the City has received regarding the incident.

17. A copy of the personnel file for each officer who has been terminated or resigned since 1/1/10.

If you will not produce these documents for inspection voluntarily, please set forth your reasons in writing for the denial. Pursuant to the FOIA, if I do not receive a response to this letter within 7 days, I will consider this inaction as a denial of my request for public records and will file the appropriate action to compel the production of these records.

I thank you in advance for your anticipated professional courtesies and attention to this matter.

Sincerely,

Luther Sutter

# SUTTER & GILLHAM, P.L.L.C.

ATTORNEYS AT LAW
MAILING ADDRESS: P.O. BOX 2012, BENTON, AR 72018
PHYSICAL ADDRESS: 310 WEST CONWAY STREET, BENTON, AR 72015
TELEPHONE 501-315-1910 FACSIMILE 501-315-1916

LUTHER ONEAL SUTTER, P.A.          TONA MARIA DEMERS          LUCIEN R. GILLHAM, P.A.

April 12, 2019

Commission of Law Enforcement Standards and Training
# 4 State Police Plaza Drive
Little Rock, Arkansas 72209

   RE: FOIA Request

To Whom it May Concern:

   Pursuant to the Arkansas Freedom of Information Act of 1967, A.C.A. § 25-19-101, *et seq.*, please be advised that I am requesting an electronic copy of the following documents:

   1. All documents maintained by ALETA from whatever source whatsoever pertaining of Officer Dakota Dunklin who was a Patrolman for the Osceola Police Department on April 1, 2019. With respect to Officer Dunklin, I am requesting: 1) all applications for law enforcement certifications or training; 2) all law enforcement certificates indicating completion of basic training or other training; 3) all training certificates or records of training from basic training classes which includes, but is not limited to, all schedules, attendance records, sign in sheets, tests, test results, lesson plans, training class summaries, descriptions for basic training classes, power points, handouts, videos or any other document or things used during any basic training classes; 4) all training certificates or records of training from in-service or post-basic training classes which, includes but is not limited by, lesson plans, training class summaries, training class summaries, schedules, attendance records, descriptions for basic training classes, power points, handouts, videos or any other document or things used during any in-service or post-basic training classes; 5) all documents reflecting any police department employing Officer Dunklin; 6) all documents pertaining to any notification to ALETA concerning Officer Dunklin's activities as a law enforcement officer including complaints, terminations, hirings, training deficiencies, waivers, requests for decertification, requests for reinstatement, disciplinary actions, etc.; 7) any other document or things in the possession of ALETA pertaining to Officer Dunklin.

   2. All documents maintained by ALETA pertaining to any training provided by the Osceola Police Department over the last 10 years which includes, but is not limited to: 1) requests for training; 2) requests for approval of training; 3) all lessons plans or training materials approved; 4) all requests to certify training officers by the Osceola Police Department; 5) all

reports with respect to training of OPD officers; 6) all requests for credits for training for OPD officers; 7) all documents reflecting compliance with training requirements for officers of the OPD; 8) all documents reflecting any deficiencies with training requirements for officers of the OPD; 9) any other document maintained by ALETA pertaining to the OPD.

I am requesting a decision to provide these documents within the time prescribed by the Arkansas FOIA and a copy of all documents in electronic format.  If not available in electronic form as defined by the Arkansas FOIA, I am requesting an estimate of the costs of providing a paper copy.

Sincerely,

Luther Sutter

# SUTTER & GILLHAM, P.L.L.C.

ATTORNEYS AT LAW
MAILING ADDRESS: P.O. BOX 2012, BENTON, AR 72018
PHYSICAL ADDRESS: 310 WEST CONWAY STREET, BENTON, AR 72015
TELEPHONE 501-315-1910 FACSIMILE 501-315-1916

LUTHER ONEAL SUTTER, P.A.          TONA MARIA DEMERS          LUCIEN R. GILLHAM, P.A.

April 25, 2019

*via First Class Mail/Electronic Mail*

Black River Technical College
**Paragould Location**
1 Black River Drive
Paragould, AR 72450

RE:     FOIA Request

To Whom it May Concern:

Pursuant to the Arkansas Freedom of Information Act of 1967, A.C.A. § 25-19-101, *et seq.*, please be advised that I am requesting an electronic copy of the following documents:

All documents maintained by Black River Technical College from whatever source whatsoever pertaining of Officer Dakota Dunklin or Dakota Dunkin who attended Basic Police Training at Black River Technical College believed to be in 2015. With respect to Mr. Dunklin or Dunkin, I am requesting: 1) all applications for law enforcement certifications or training; 2) all law enforcement certificates indicating completion of basic training or other training; 3) all training certificates or records of training from basic training classes which includes, but is not limited to, all schedules, attendance records, sign in sheets, tests, test results, lesson plans, training class summaries, descriptions for basic training classes, power points, handouts, videos or any other document or things used during any basic training classes; 4) all training certificates or records of training from in-service or post-basic training classes which, includes but is not limited by, lesson plans, training class summaries, training class summaries, schedules, attendance records, descriptions for basic training classes, power points, handouts, videos or any other document or things used during any in-service or post-basic training classes; 5) all documents reflecting any police department employing Officer Dunklin or Dunkin; 6) all documents pertaining to any notification to Black River Technical College concerning Officer Dunklin's activities as a law enforcement officer including complaints, terminations, hirings, training deficiencies, waivers, requests for decertification, requests for reinstatement, disciplinary actions, etc.; 7) any other document or things in the possession of Black River Technical College Officer Dunklin or Dunkin.

Letter to Black River Technical College
**April 25, 2019**
**Page Two**

I am requesting a decision to provide these documents within the time prescribed by the Arkansas FOIA and a copy of all documents in electronic format. If not available in electronic form as defined by the Arkansas FOIA, I am requesting an estimate of the costs of providing a paper copy.

I look forward to hearing from you.

Sincerely,

*Luther Sutter*

Luther Sutter, Esq.
**SUTTER & GILLHAM, P.L.L.C.**

LOS/eah

cc:    Andrew Clarke

# SUTTER & GILLHAM, P.L.L.C.

### ATTORNEYS AT LAW

MAILING ADDRESS: P.O. BOX 2012, BENTON, AR 72018
PHYSICAL ADDRESS: 310 WEST CONWAY STREET, BENTON, AR 72015
TELEPHONE 501-315-1910  FACSIMILE 501-315-1916

LUTHER ONEAL SUTTER, P.A.          TONA MARIA DEMERS          LUCIEN R. GILLHAM, P.A.

April 25, 2019

*via First Class Mail/Electronic Mail*

Blytheville Police Department
201 W Walnut St
Blytheville, AR 72315

RE:    FOIA Request

To Whom it May Concern:

Pursuant to the Arkansas Freedom of Information Act of 1967, A.C.A. § 25-19-101, *et seq.*, please be advised that I am requesting an electronic copy of the following documents:

All documents maintained by City of Blytheville or the Blytheville Police Department from whatever source whatsoever pertaining of Dakota Dunklin or Dakota Dunkin who was a Patrolman for the Blytheville Police Department. With respect to Officer Dunklin or Dunkin, I am requesting: 1) all applications for law enforcement certifications or training; 2) all law enforcement certificates indicating completion of basic training or other training; 3) all training certificates or records of training from basic training classes which includes, but is not limited to, all schedules, attendance records, sign in sheets, tests, test results, lesson plans, training class summaries, descriptions for basic training classes, power points, handouts, videos or any other document or things used during any basic training classes; 4) all training certificates or records of training from in-service or post-basic training classes which, includes but is not limited by, lesson plans, training class summaries, training class summaries, schedules, attendance records, descriptions for basic training classes, power points, handouts, videos or any other document or things used during any in-service or post-basic training classes; 5) all documents reflecting any police department employing Officer Dunklin or Dunkin; 6) all documents pertaining to any Officer Dunklin's or Dunkin's activities as a law enforcement officer including complaints, internal affairs investigation, terminations, hirings, training deficiencies, waivers, requests for decertification, requests for reinstatement, disciplinary actions, etc.; 7) any personnel file maintained by the City of Blytheville or BPD; and 8) any other document or things in the possession of the City of Blytheville or BPD pertaining to Officer Dunklin or Dunkin.

Letter to Blytheville Police Department
April 25, 2019
Page Two

_____

I am requesting a decision to provide these documents within the time prescribed by the Arkansas FOIA and a copy of all documents in electronic format.  If not available in electronic form as defined by the Arkansas FOIA, I am requesting an estimate of the costs of providing a paper copy.

I look forward to hearing from you.

Sincerely,

*Luther Sutter*

Luther Sutter, Esq.
**SUTTER & GILLHAM, P.L.L.C.**

LOS/eah

cc:    Andrew Clarke

# SUTTER & GILLHAM, P.L.L.C.

## ATTORNEYS AT LAW
MAILING ADDRESS: P.O. BOX 2012, BENTON, AR 72018
PHYSICAL ADDRESS: 310 WEST CONWAY STREET, BENTON, AR 72015
TELEPHONE 501-315-1910 FACSIMILE 501-315-1916

LUTHER ONEAL SUTTER, P.A.        TONA MARIA DEMERS        LUCIEN R. GILLHAM, P.A.

April 26, 2019

**ARKANSAS STATE POLICE**
One State Police Plaza Drive
Little Rock, AR 72209

   RE: Public Records Request - FOIA

To Whom it May Concern:

  Please be advised that my firm and Andy Clarke have been retained to represent the Pete Edwards and his family in claim stemming from a shooting incident on April 1-2, 2019, in Osceola, Arkansas. Please address all future contact and correspondence concerning this incident to my attention and refrain from contacting my client without my express permission. It has also come to my understanding that members of the ASP came out to Mr. Edwards hospital and took a recorded statement without my permission. Please provided me with a copy of any such video, audio or transcribed statement of my client.

  This letter also serves to put you on notice to maintain the integrity of ALL EVIDENCE pertaining to the stop, shooting, detainment, transportation, or investigation of this incident or the officer involved in the shooting on April 1, 2019 and April 2, 2019 and not to dispose, alter, modify, destroy or perform destructive testing on any evidence, documents, reports, records, etc. pertaining to this incident prior to providing my office an opportunity to inspect this evidence. This request covers anything which in any way pertains to this incident and includes, but is not limited to, all correspondence, memos, law enforcement records, jail records, transportation records, memoranda, notes, lists, incident reports, supplemental incident reports, warrants, witness statements, videotapes from any source, audiotapes from any source, photographs, booking reports and photographs, intake sheets, jail logs, cellular telephone records, witness statements, diagrams, fingerprint cards, dispatcher tapes and logs, videos from patrol cars, officer schedules, preliminary hearing tapes, photographs of the scene and the victims, field notes, daily activity logs, daily rosters, daily work schedules, policies, procedures, ambulance records or reports, internal investigations, towing records, correspondence, personal belongings of my clients/other citizens, alleged drugs and/or drug paraphernalia, test results or any other evidence, records, documents or things pertaining to this the arrest or detainment of my clients and other citizens on April 1, 2019 and April 2, 2019.

Letter to **ARKANSAS STATE**
**POLICE HEADQUARTERS**
April 26, 2019
Page Two

_____

If any evidence or other things pertaining in any way to this incident has or have already been tested, inspected, altered, modified, destroyed, lost or changed in any manner, I am requesting that you identify with particularity the evidence or things that has or have been tested, inspected, modified, altered, destroyed, lost or changed in any manner and the name, address and telephone number of the   person, persons, entity or entities who tested, altered, inspected, modified, destroyed, lost or changed in any manner any evidence or thing pertaining to this incident.

Pursuant to Arkansas Freedom of Information Act, please be advised that I would like to inspect and photocopy any and all records in the possession and/or control of the City of Osceola pertaining to the search, seizure, arrests and/or detainment of my client and any other citizens on April 1, 2019 and April 2, 2019:

1.      All documents and things in any way related to the stop, shooting, arrest, detainment, transportation, booking, charging, investigation of the incident involving my client and the officers involved in the stop and shooting on April 1, 2019 and April 2, 2019, including, but not limited to, the documents previously listed previously in this letter and used or filed in any subsequent criminal proceedings against any such persons.

2.      Any documents and things obtained during your investigation of this incident from the any law enforcement department including the Osceola Police Department or ALETA which includes documents pertaining to these events and/or the officers involved which would include all documents listed previously and all police reports, internal investigations from OPS, video tapes, audio tapes, witness statements, personnel records, training records, disciplinary records, etc.

3.      A copy of any and all documents, correspondence, evidence or other matters received from any state or federal agency including the OPD, ASP, DA, FBI, DOJ, AUSA regarding this incident or any investigation of City of Osceola.

4.      A copy of any and all documents, correspondence, evidence or other matters provided to any state or federal agency including the OPD, ASP, DA, FBI, DOJ, AUSA regarding this incident or any investigation of City and/or other employees or agents of City of Osceola.

5.      A copy of the personnel records and training records for any officer involved in the incident involving my client on April 1-2, 2019.

Letter to **ARKANSAS STATE**
**POLICE HEADQUARTERS**
April 26, 2019
Page Three

6.      A copy of any policies, rules, regulations of the OPD and ASP with respect to 1) search and seizure; 2) warrantless entries onto property; 3) probable cause; 4) reasonable suspicion; 5) detaining citizens; 6) arresting procedures; 7) use of force and deadly force; 8) mirandizing suspects; 9) transportation of suspects; 10) warrantless arrests for misdemeanors; 11) citations in lieu of physical arrest; 12) use of force; 13) use of audio/video recording devices; 14) group or mass arrests; 15) booking and processing of detainees or arrestees; 16) report writing; 17) record keeping; 18) processing property or evidence; 19) providing medical attention; 20) use of force; 21) excessive force; 22) code of silence; 24) code of ethics; 25) summoning medical attention; 26) completion of Use of Force Reports or other reports which document the use of any type of force on a citizen; 27) investigating officer compliance with policy and procedure and critical incidents; 28) monitoring officer compliance with policy including any early warning system; 29) training officers; 30) hiring of officers, including psychological testing; 31) evaluation of officers; 32) retention of officers; 33) civil rights laws and violations; and 34) etc. which were in effects on April 1, 2019.

7.      A copy of any correspondence or other documents and things received by the ASP from any source pertaining to the incident involving my client on April 1-2, 2019, or the officers involved.

If you will not produce these documents for inspection voluntarily, please set forth your reasons in writing for the denial. Pursuant to the FOIA, if I do not receive a response to this letter within seven (7) days, I will consider this inaction as a denial of my request for public records and will file the appropriate action to compel the production of these records.

I thank you in advance for your anticipated professional courtesies and attention to this matter.

I look forward to hearing from you.

Sincerely,

*Luther Sutter*

Luther Sutter, Esq.
**SUTTER & GILLHAM, P.L.L.C.**

LOS/eah

cc:     Andy Clarke

# SUTTER & GILLHAM, P.L.L.C.
## ATTORNEYS AT LAW
MAILING ADDRESS: P.O. BOX 2012, BENTON, AR 72018
PHYSICAL ADDRESS: 310 WEST CONWAY STREET, BENTON, AR 72015
TELEPHONE 501-315-1910 FACSIMILE 501-315-1916

LUTHER ONEAL SUTTER, P.A.       TONA MARIA DEMERS          LUCIEN R. GILLHAM, P.A.

May 10, 2019

*via Facsimile 870/563-5657*
*Second and Final Request*

Osceola Police Department
% Custodian of Records
Captain Tom Scrivner
401 W Keiser Ave,
Osceola, AR 72370

RE:     Public Records Request // Pete Edwards // April 1, 2019 incident

Dear Sir or Madam:

As previously advised on April 2, 2019, my firm and Andy Clarke have been retained to represent the Pete Edwards, and his family, in claims stemming from a shooting incident on April 1, 2019. Please address all future contact and correspondence concerning this incident to my attention and refrain from contacting my client(s) without my express permission.

This letter also serves to put you on notice to maintain the integrity of ALL EVIDENCE pertaining to the arrest, detainment, transportation, booking, charging, releasing of my clients and others on April 1, 2019 and April 2, 2019 and not to dispose, alter, modify, destroy or perform destructive testing on any evidence, documents, reports, records, etc. pertaining to this incident prior to providing my office an opportunity to inspect this evidence. This request covers anything which in any way pertains to this incident and includes, but is not limited to, all correspondence, memos, law enforcement records, jail records, transportation records, memoranda, notes, lists, incident reports, supplemental incident reports, warrants, witness statements, videotapes from any source, audiotapes from any source, photographs, booking reports and photographs, intake sheets, jail logs, cellular telephone records, witness statements, diagrams, fingerprint cards, dispatcher tapes and logs, videos from patrol cars, officer schedules, preliminary hearing tapes, photographs of the scene and the victims, field notes, daily activity logs, daily rosters, daily work schedules, policies, procedures, ambulance records or reports, internal investigations, towing records, correspondence, personal belongings of my clients/other citizens, alleged drugs and/or drug paraphernalia, test results or any other evidence, records, documents or things pertaining to this the arrest or detainment of my clients and other citizens on April 1, 2019 and April 2, 2019.

Letter to Osceola Police Dept.
May 10, 2019
Page Two

_____

    If any evidence or other things pertaining in any way to this incident has or have already been tested, inspected, altered, modified, destroyed, lost or changed in any manner, I am requesting that you identify with particularity the evidence or things that has or have been tested, inspected, modified, altered, destroyed, lost or changed in any manner and the name, address and telephone number of the  person, persons, entity or entities who tested, altered, inspected, modified, destroyed, lost or changed in any manner any evidence or thing pertaining to this incident.

    Pursuant to Arkansas Freedom of Information Act, please be advised that I would like to inspect and photocopy any and all records in the possession and/or control of the City of Osceola pertaining to the search, seizure, arrests and/or detainment of my client and any other citizens on April 1, 2019 and April 2, 2019:

1.   All documents and things in any way related to the arrest, detainment, transportation, booking, charging, releasing of my clients and others on April 1, 2019 and April 2, 2019, including, but not limited to, the documents previously listed previously in this letter and used or filed in any subsequent criminal proceedings against any such persons.

2.   The personnel files of each and every officer or employee who was involved in any way with the arrest, detainment, transportation, booking, charging and/or release of my clients of any other citizens on April 1, 2019 and April 2, 2019, or at any other subsequent time.

3.   A copy of any and all internal investigations of the incident which occurred on April 1, 2019 and April 2, 2019, and any criminal proceedings stemming from this incident.

4.   A copy of any and all documents, correspondence, evidence or other matters received from any state or federal agency including the ASP, DA, FBI, DOJ, AUSA regarding this incident or any investigation of City of Osceola.

5.   A copy of any and all documents, correspondence, evidence or other matters provided to any state or federal agency including the ASP, DA, FBI, DOJ, AUSA regarding this incident or any investigation of City and/or other employees or agents of City of Osceola.

6.   A copy of all documents, listings or compilations of all claims made against the City of Osceola, and/or officers or employee of BCSD or Benton County alleging police misconduct and/or negligence for the past 15 years and documentation reflecting the resolution of each claim, regardless of whether the City contends that said resolution of the claim was confidential;

Letter to Osceola Police Dept.
May 10, 2019
Page Three

7.  A copy of all documents, listings or compilations of all complaints or lawsuits filed against the City alleging police misconduct and/or negligence for the last 15 years and documentation reflecting the resolution of each complaint or lawsuits by way of settlement, judgment or otherwise, regardless of whether the City and/or officers or employee of the City contends that said resolution of the claim was confidential;

8.  A copy of the training records for each officer on duty on 4/1/19.

9.  A copy of all documents, listings, summaries and/or compilations of weekly, monthly and/or annual reports of Internal Affairs complaints made against officers of the City for the last 15 years which identifies the complainant, nature of the complaint and the resolution or disposition of the complaint;

10. A copy all documents, listings and/or compilations that reflect all officers of the City who have been terminated for misconduct and/or violation of policy over the last 15 years which identifies the nature of the misconduct and/or violation of policy;

11. A copy of all documents, listings and/or compilations which reflects all officers of the City who have been charged with criminal offenses over the last 15 years which identifies the nature of the criminal offense and the results of any criminal prosecution;

12. A copy of any judgments, decrees, consent judgments, injunctions, settlement agreements or other legal document entered by City or entered by a court with any governmental and/or law enforcement agency dealing in any respect with operation of the City and its respective divisions; and

13. A copy of any policies, rules, regulations of City with respect to 1) search and seizure; 2) warrantless entries onto property; 3) probable cause; 4) reasonable suspicion; 5) detaining citizens; 6) arresting procedures; 7) use of force; 8) mirandizing suspects; 9) transportation of suspects; 10) warrantless arrests for misdemeanors; 11) citations in lieu of physical arrest; 12) use of force; 13) use of audio/video recording devices; 14) group or mass arrests; 15) booking and processing of detainees or arrestees; 16) report writing; 17) record keeping; 18) processing property or evidence; 19) providing medical attention; 20) use of force; 21) excessive force; 22) code of silence; 24) code of ethics; 25) summoning medical attention; 26) completion of Use of Force Reports or other reports which document the use of any type of force on a citizen; 27) investigating officer compliance with policy and procedure and critical incidents; 28) monitoring officer compliance with policy including any early warning system; 29) training officers; 30) hiring of officers, including psychological testing; 31) evaluation of officers; 32) retention of officers; 33) civil rights laws and violations; and 34) etc. which were in effects on April 1, 2019.

Letter to Osceola Police Dept.
May 10, 2019
Page Four

14. Any correspondence or other documents received by Benton County and/or BCSO from any person or entity concerning the incident which occurred on April 1, 2019, and the subsequent criminal proceedings arising therefrom.

15. Any correspondence or other documents sent by Benton County and/or BCSO to any person or entity concerning the incident which occurred on April 1, 2019, and the subsequent criminal proceedings arising therefrom.

16. A copy of all FOIA requests the City has received regarding the incident.

17. A copy of the personnel file for each officer who has been terminated or resigned since 1/1/10.

If you will not produce these documents for inspection voluntarily, please set forth your reasons in writing for the denial. Pursuant to the FOIA, if I do not receive a response to this letter within *7 days*, I will consider this inaction as a denial of my request for public records and will file the appropriate action to compel the production of these records.

I thank you in advance for your anticipated professional courtesies and attention to this matter. I look forward to hearing from you.

Sincerely,

Lucien R. Gillham, Esq.
**SUTTER & GILLHAM, P.L.L.C.**

LRG/eah

cc: Andy Clarke, Esq.
*via Electronic Transmission*