IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PETE EDWARDS                                                    PLAINTIFF

v.                              No. 3:19-cv-126-DPM

DAKOTA DUNKIN, in his
individual capacity;  JOHN
DOES I-X, in their individual
capacities;  and CITY OF
OSCEOLA, ARKANSAS                                          DEFENDANTS

ORDER

**1.**  Osceola Police Officer Dakota Dunkin shot Pete Edwards during an early morning traffic stop in April 2019.  Edwards was paralyzed.  He has sued Officer Dunkin and the City.  He makes various federal and state law claims.  Officer Dunkin and Osceola have moved for summary judgment.  Edwards presses for a trial.

**2.**  Some background facts are undisputed.  Where there is a dispute, the court takes the record in the light most favorable to Edwards.  *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

Officer Dunkin saw Edwards in a black Ford Mustang with tinted windows shortly after midnight.  Edwards was headed to pick up a doghouse from Mabelene Morens's house.  He had been smoking marijuana.

Officer Dunkin activated his blue police lights behind Edwards around the time Edwards pulled into Morens's driveway. When Edwards saw the blue lights, he got out of his car and asked Officer Dunkin why he pulled him over.   Officer Dunkin didn't respond;   and Edwards said the officer already had his gun out. Officer Dunkin smelled marijuana and saw smoke.   Edwards asked him to put his gun down.   Officer Dunkin ordered Edwards to put his hands up and get on his knees.   Edwards's hands were already up, but, because he was intoxicated and feared for his life, he didn't get on his knees.   Edwards's Mustang was still running, and the engine was loud. He asked Officer Dunkin if he could move from the driver's side to the passenger side to shut it off.   Officer Dunkin was on the rear passenger side;   and when Edwards started backing up toward the front of the car, Officer Dunkin shouted:   "Freeze.   Get on your knees."   *Doc. 119 at 7.* Edwards kept backing up toward the front of the car until he and Officer Dunkin were at diagonal ends:   Edwards at the driver-side headlight   and Officer Dunkin at the passenger-side taillight. The situation was tense;   movements were fluid;   and Officer Dunkin started shooting.

**3.**   A few threshold points.   First, Officer Dunkin initially moved for summary judgment on all the claims against him in his individual capacity.   He has clarified in his reply brief, however, that he isn't

seeking judgment as a matter of law on the Fourth Amendment excessive force claim. That claim will therefore be tried.

Second, all claims against the John Doe defendants will be dismissed without prejudice. Those individuals remain unidentified, and the time to amend pleadings has long passed. *Doc. 80 at 1.*

Third, Edwards has abandoned the following claims in his briefing papers:

- Fourteenth Amendment due process clause violations;

- 42 U.S.C. § 1981 violations;

- Title VI of the 1964 Civil Rights Act violations; and

- State law tort claims against the City.

Those claims will be dismissed without prejudice.

Fourth, Edwards's claims under the Arkansas Civil Rights Act track the federal claims. *Graham v. Cawthorn*, 2013 Ark. 160, at 13-14, 427 S.W.3d 34, 44-45. They need no separate analysis.

**4. First Amendment.** Edwards claims that Officer Dunkin retaliated against him for asking about the reasons for the stop and for asking Officer Dunkin to put the gun down. But the undisputed facts don't support this claim. Officer Dunkin smelled marijuana and saw smoke. Edwards was intoxicated and kept moving toward the passenger side of the car — where Officer Dunkin was standing. All the while, Edwards was ignoring Officer Dunkin's orders to get on his

knees and freeze. The First Amendment protects a citizen's right to speak his mind to police. *Copeland v. Locke*, 613 F.3d 875, 880 (8th Cir. 2010). On this record, though, a reasonable fact-finder could not conclude that Edwards's questions were a but-for cause of Officer Dunkin's decision to use deadly force. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). Nor could a reasonable fact-finder conclude that Officer Dunkin singled Edwards out because of those questions. *Ibid.* His First Amendment retaliation claim therefore fails as a matter of law.

**5. Equal Protection.** Edwards, a black man, claims that Officer Dunkin denied him equal protection under the law because of his race. This kind of selective enforcement claim requires Edwards to "show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose." *Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016). He compares Osceola's demographics—41 percent white and 51 percent black—to the Osceola Police Department's use of force reports. Those reports are troubling. By the numbers, Osceola used force against black individuals at a much higher rate than against persons of all other races. But a racially disproportionate impact alone isn't enough to prove a discriminatory purpose. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). And Edwards hasn't identified anyone of another race who was "similarly situated in all

relevant respects" but was treated differently. *Gilani*, 843 F.3d at 348-49 (quotation omitted). A reasonable fact-finder could not return a verdict for Edwards on his equal protection claim. It therefore fails as a matter of law.

**6. Unreasonable Seizure.** Edwards contends Officer Dunkin unreasonably seized him three times: when he stopped him, when he held him at gunpoint, and when he shot him. Police can seize a person by either "physical force or a show of authority that in some way restrain[s] the liberty of the person." *Pollreis v. Marzolf*, 66 F.4th 726, 730 (8th Cir. 2023) (quotation omitted).

Was Edwards seized? Yes. He was seized when Officer Dunkin held him at gunpoint and shouted orders at him in a tone that compelled compliance. *Pollreis*, 66 F.4th at 730-31. And he was seized when Officer Dunkin shot him with the intent to stop his movement. *Torres v. Madrid*, 141 S. Ct. 989, 999 (2021). Officer Dunkin, however, argues that the act of turning on his blue lights wasn't a seizure. And if it was, he argues this law was not clearly established in April 2019.

This argument is unpersuasive. A traffic stop is a Fourth Amendment seizure. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001). Officer Dunkin testified: "I initiate my traffic stops when I initiate my lights." *Doc. 117-3 at 120.* Construing the facts in the light most favorable to

–5–

Edwards, no reasonable person in his circumstances would have felt free to leave. *Mettler v. Whitledge*, 165 F.3d 1197, 1203 (8th Cir. 1999). Officer Dunkin parked behind Edwards on the street with his blue lights flashing. It was around 12:30 in the morning. At this point, Edwards was parked in a residential driveway. No one in these circumstances could doubt his "immediate arrest or detention [was] being attempted by a duly authorized law enforcement officer." ARK. CODE ANN. § 5-54-125(a); *see also Stutte v. State*, 2014 Ark. App. 139, at 5, 432 S.W.3d 661, 664. Officer Dunkin's stop was a seizure under clearly settled law. *Rodriguez*, 575 U.S at 354.

The deep issue is whether each seizure was reasonable. Here, the parties' version of the events diverge sharply. Edwards testified that Officer Dunkin switched on his blue lights after he was "already in the driveway, lights off, and the car was still on." *Doc. 107-1 at 14*. But Officer Dunkin said Edwards was driving with his headlights off. "He didn't pull into the driveway until after I initiated my lights." *Doc. 117-12 at 18*. He also said Edwards's tag light wasn't working correctly.

These factual disputes are material. Driving at night without headlights violates the law. ARK. CODE ANN. § 27-36-204(a). So does driving at night without tag lights. ARK. CODE ANN. § 27-36-215(c)(2). Either fact, if true, would have given Officer Dunkin probable cause to pull Edwards over. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir.

2008). And whether Officer Dunkin drew his weapon before or after he detected marijuana is material to whether he had probable cause to prolong an otherwise legitimate traffic stop. *Rodriguez*, 575 U.S. at 355. These disputes prevent the Court from making a final ruling on qualified immunity until a jury decides what actually happened that night. And the jury will decide whether the shooting was reasonable, too. Officer Dunkin didn't move for summary judgment on that point.

**7. Tort Liability.** Edwards hasn't abandoned his state law tort claims against Officer Dunkin. And Officer Dunkin hasn't provided any argument or pointed to any facts supporting his motion for summary judgment on those claims. Fed. R. Civ. P. 56(c). He incorporates by reference the City's brief-in-support, *Doc. 104*, of its own summary judgment motion; but the City only addressed a *respondeat superior* theory of tort liability. That theory doesn't apply to Officer Dunkin in his individual capacity. These state law claims against Officer Dunkin will go to trial, too.

**8. Other Claims Against Osceola.** Edwards presses several claims against the City under various theories of municipal liability. Under each theory, Osceola may be liable only if Officer Dunkin first committed an unconstitutional act. *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018).

To the extent Edwards seeks to hold Osceola liable for violating his First and Fourteenth Amendment rights, those claims will be

dismissed with prejudice.  Officer Dunkin did not run afoul of those constitutional guarantees.  *Brossart v. Janke*, 859 F.3d 616, 627-28 (8th Cir. 2017).

Edwards's failure-to-screen claim also fails.  He hasn't shown that the Osceola Police Department was deliberately indifferent to the risk of a particular constitutional violation when it hired Officer Dunkin. *Board of County Commissioners v. Brown*, 520 U.S. 397, 411-12 (1997). The City concedes that Officer Dunkin's tenure with the Blytheville Police Department was not exemplary.  Osceola Police Chief Jerry Hamilton testified that he shouldn't have been hired.  But Dunkin's past reprimands included write-ups for insubordination, refusing to work, incompetence, and failure to comply with lawful orders. A failure-to-screen claim "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Brown*, 520 U.S. at 412 (emphasis original).  A reasonable juror couldn't conclude that Osceola was deliberately indifferent to the risk that Officer Dunkin would shoot and paralyze a person.  This claim will be dismissed with prejudice.

Edwards's failure-to-investigate claim fails, too.  True, he has demonstrated that Osceola's procedures for investigating and reviewing its use-of-force reports were, at best, subpar.  But he hasn't shown a pattern of past constitutional violations resulting in injuries

similar to those Edwards sustained. *Perkins v. Hastings*, 915 F.3d 512, 521-22 (8th Cir. 2019). This claim will be dismissed with prejudice.

Edwards's failure to supervise/discipline claim also fails. This type of claim often seeks to impose personal liability on a deliberately indifferent supervisor, or one who tacitly authorizes misconduct. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Edwards hasn't sued any of Officer Dunkin's supervisors in their individual capacities. And to the extent he seeks to hold the City liable for its failure to supervise or discipline Officer Dunkin, his claim fails for the same reasons as his failure-to-investigate claim: the record shows no pattern of similar constitutional violations by inadequately supervised Osceola officers. This claim will be dismissed with prejudice.

Edwards's failure to train/equip claim survives for now. Officer Dunkin's training taught him to progress through a continuum of force when force was necessary. But in April 2019, the police department only had two working tasers, and one of them wasn't outfitted for the field. They were also short on OC spray and batons. Officer Dunkin didn't have a taser, OC spray, or a baton when he stopped Edwards. Without these tools, Officer Dunkin was left with two options: his hands or his gun. It is predictable that "an officer lacking specific tools to handle [fleeing felons] will violate citizens' rights." *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011);

–9–

*Larkin v. St. Louis Housing Authority Development Corp.*, 355 F.3d 1114, 1117-18 (8th Cir. 2004). And it remains an open question whether Officer Dunkin violated Edwards's Fourth Amendment rights. In these circumstances, Edwards has presented a triable question on the adequacy of Officer Dunkin's training and equipment. This claim survives summary judgment.

*     *     *

The City's motion for summary judgment, *Doc. 103*, is granted in part and denied in part. Officer Dunkin's motion for summary judgment, *Doc. 105*, is granted in part and denied in part.

This case is first out for trial on 11 December 2023 in Jonesboro. The Court intends to submit the case to the jury in two rounds. After closing arguments focused on the factual disputes about what happened, the first round will be a verdict on fact questions that must be answered to resolve whether Officer Dunkin is entitled to qualified immunity. Here's a first draft:

- Was Edwards driving or parked when Officer Dunkin turned on his blue lights?
- If Edwards was driving, were his headlights on or off?
- If Edwards was driving, was his tag light on or off?
- Did Officer Dunkin draw his weapon before or after he smelled marijuana and saw smoke?

–10–

We will fine tune these questions as the proof comes in. And the Court will revisit the issue of qualified immunity based on the jury's answers.

In the second round, the Court will give further instructions (including elements) on all remaining claims, counsel will make second closing arguments focused on those claims, and the Court will give the jury the case on the merits. *See Doc. 143* in *Cole v. Hutchins*, Case No. 4:17-cv-553-DPM (E.D. Ark. 18 August 2021); *Doc. 143* in *Tanner v. Ziegenhorn*, Case No. 4:17-cv-780-DPM (E.D. Ark. 30 September 2021).

So Ordered.

D.P. Marshall Jr.
United States District Judge

2 November 2023